IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-283-BO

| | |
|---|---|
| WILLIAM H. BARTELS, Executor of the ESTATE OF JEANNE T. BARTELS, and JOSEPH J. PFOHL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SABER HEALTHCARE GROUP, LLC, SABER HEALTHCARE HOLDINGS, LLC, FRANKLIN OPERATIONS LLC d/b/a FRANKLIN MANOR ASSISTED LIVING CENTER, SMITHFIELD EAST HEALTH HOLDINGS, LLC d/b/a GABRIEL MANOR ASSISTED LIVING CENTER, and QUEEN CITY AL HOLDINGS, LLC d/b/a THE CROSSINGS AT STEELE CREEKE,<br><br>Defendants. | ORDER |

This cause comes before the Court on the parties' consent motion for modification of scheduling order, defendants' motion to seal, defendants' partial motions to dismiss under Rule 12(b)(1) and for judgment on the pleadings under Rule 12(c), and plaintiffs' motion for class certification. The matters are ripe for disposition. For the reasons discussed below, the parties' consent motion for modification of scheduling order is granted, defendants' motion to seal and motions to dismiss under Rule 12(b)(1) and for judgment on the pleadings under Rule 12(c) are granted, and plaintiffs' motion for class certification is denied.

## BACKGROUND

In April 2016, plaintiffs filed this action in Franklin County Superior Court as a putative class action alleging claims arising from defendants' failure to comply with their contractual and statutory obligations to provide assisted living services that meet the needs of the residents. The plaintiffs that remain in the case are Joseph Pfohl, executor of the estate of Bernice Pfohl, and Edward Bartels, executor of the estate of Jeanne Bartels. Ms. Pfohl and Ms. Bartels were residents of Franklin Manor.

Plaintiffs named five defendants: (1) Saber Healthcare Group, LLC ("SHG"), (2) Saber Healthcare Holdings, LLC ("SHH"), (3) Franklin Operations, LLC, d/b/a Franklin Manor Assisted Living Center ("Franklin Manor"), (4) Smithfield East Health Holdings, LLC, d/b/a Gabriel Manor Assisted Living Center ("Gabriel Manor"), (5) Queen City Al Holdings, LLC, d/b/a The Crossings at Steele Creek ("The Crossings"). The latter three defendants are the adult care homes, collectively referred to in the complaint as the North Carolina Care Centers. The relationship between the defendants, including the amount of ownership and control exercised by SHH and SHG over the North Carolina Care Centers, is disputed. Defendants removed the case to this Court based on diversity of parties and the Class Action Fairness Act.

According to plaintiffs' amended complaint, plaintiffs each entered into a written contract with defendants called the Assisted Living Residency Agreement (Residency Agreement) under which defendant will provide "basic services" in exchange for consideration ranging from $4,100 or $5,000 per month based on whether a resident elected a small companion suite, large companion suite, or a private studio. Amd. Compl. ¶¶ 47–48. The agreement defined basic services as the provision of "room, board, and such services as may be required for the . . . safety, good grooming,

2

and well-being of the Resident." Basic services were tasks such as assistance with walking, toileting, housekeeping, grooming, eating, delivering medications, and overall supervision and were performed by unlicensed care aides. *Id.* ¶ 49. Residents could pay an additional $900 per month to have the physical assistance of two people for care or dining and an additional $300 per month for the administration of more than six medications. *Id.* ¶ 51. These additional services required defendants to have additional staff members on hand. *Id.* ¶ 52. Plaintiffs allege that defendants consistently staffed its North Carolina Care Centers inadequately, such that they were unable to provide the services that were required for the safety, good grooming, and well-being of the plaintiffs and putative class members. *Id.* ¶ 54. The complaint further alleges that defendants knew or should have known that they would not be able to comply with their obligations under the Residency Agreements and that they never intended to comply with their obligations when they entered into those agreements. *Id.* ¶¶ 104–05. Plaintiffs bring three claims for relief: (1) breach of contract, (2) violation of the North Carolina Unfair Trade Practices Act (UDTPA), N.C. Gen. Stat. § 71–1.1, and (3) injunctive relief to enforce provisions of N.C. Gen. Stat. § 131D-19 *et seq.*

DISCUSSION

Motion for Modification of Scheduling Order

On September 14, 2020, the parties jointly filed a motion for modification of the scheduling order to extend certain deadlines by approximately sixty days. On April 23, 2020, this Court entered a scheduling order [DE 125] that adopted most of the joint Rule 26(f) report, but it set some deadlines. The Court stated that the parties could request modification of the scheduling order in conformity with Fed. R. Civ. P. 16(b)(4). For good cause shown, this Court grants the parties' motion for modification of the scheduling order. Fact discovery shall be concluded by

3

November 15, 2020; disclosure of expert witnesses and reports are due from plaintiffs by December 15, 2020, rebuttable expert witnesses and reports are due from defendants by January 30, 2021, and all expert discovery shall be concluded by March 30, 2021; and all potentially dispositive motions shall be filed by April 30, 2021.

Motion to Seal

On June 12, 2020, defendants moved to permanently seal (1) certain exhibits to the Second Declaration of Dennis Toney dated June 10, 2020 [DE 132], (2) certain exhibits to the Second Declaration of Pamela Mayo dated June 10, 2020 [DE 134], (3) certain exhibits to the Declaration of Stephen Lynn dated June 11, 2020 [DE 136], and (4) certain exhibits [DE 130] to defendants' memorandum in opposition to plaintiffs' motion for class certification and to appoint counsel [DE 129]. Plaintiffs have not responded. For good cause shown, this Court grants the defendants' motion to seal.

Motion for Class Certification

Rule 23 of the Federal Rules of Civil Procedure provides that certification of a class is appropriate if the following prerequisites are satisfied:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed R. Civ. P. 23(a). If the prerequisites have been satisfied, the parties seeking class certification must also demonstrate that the action falls within a category of Rule 23(b). *See Haywood v. Barnes*, 109 F.R.D. 568, 575 (E.D.N.C. 1986). Plaintiff asserts that the claim is maintainable under Rule 23(b)(3).

4

Rule 23(b)(3) provides that a class action may be maintained if Rule 23(a) is satisfied and if: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To be certified as a Rule 23(b)(3) class action, plaintiffs must satisfy both the "predominance" and "superiority" components of the rule. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). If a question is individual, the evidence presented will vary from member to member. *Id.*

Here, plaintiffs do not satisfy the Rule 23(b)(3) predominance inquiry, and individualized issues outweigh any common issues that plaintiff identifies. Specifically, individualized issues regarding injury predominate over any common questions because there is no reliable means of providing class-wide injury. The staffing levels varied significantly across the class period, and state regulators performing inspections found staffing levels to be appropriate except on three occasions. Plaintiffs will have to determine what the staffing of the facility was during each shift and on each day of each putative class member's residency. Individualized issues will further abound, as plaintiffs must show what the needs of the residents were at any given time in order to show that those needs were net met. The putative class members were subject to individualized care plans, which changed frequently. The Court will need to individually assess each care place for each resident of the facility to determine what the needs of the residents were

5

at any given time and whether those needs were adequately met. Therefore, plaintiffs' motion for class certification must be denied.

Motion to Dismiss

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed if the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Although the remaining plaintiffs were both residents of Franklin Manor, plaintiffs bring complaints against all the North Carolina Care Centers. Amd. Compl. ¶¶ 18–20, 23–25. Plaintiffs allege that defendants are alter egos of each other and argue that "defendants have created a complex ownership and management structure in order to shield themselves from liability and to carry out their single enterprise with financial impunity." *Id.* ¶ 27. Defendant Saber Group owns the trademark "Saber Healthcare Group," and defendants use this mark and the accompanying brand for all its eighty-three skilled nursed and assisting living homes in six different U.S. states. *Id.* ¶ 32. Plaintiffs claim that defendants publicly portray themselves as a single enterprise, with

6

separate webpages within a single website rather than separates websites, and disregard corporate formalities and commingle funds. *Id.* ¶¶ 33–34. Plaintiffs argue that Saber exercises complete dominion and control over the North Carolina Care Centers, performing executive functions such as determining the budget and staffing level of each facility, and exercises pervasive and continual control over the North Carolina Care Centers such that they are mere instrumentalities of the Saber Healthcare Group. *Id.* ¶¶ 35–36. Plaintiffs argue that they have standing to bring claims against Gabriel Manor and The Crossings not for breaching contracts the plaintiffs did execute, but instead as alter egos of the defendants who breached the contracts the plaintiffs did execute. *Bartels v. Saber Healthcare Grp., LLC*, 880, F.3d 668, 677 (4th Cir. 2018).

For an action to constitute a case or controversy under Article III, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Plaintiffs attempt to create standing by alleging that all defendants are alter egos of each other. This attempt fails. Piercing the corporate veil is not an independent cause of action, but "rather is a means of imposing liability on an underlying cause of action." *Peacock v. Thomas*, 516 U.S. 349, 354 (1996). Therefore, plaintiffs cannot use this doctrine to create standing where they do not have it. Even if plaintiffs were able to show that defendants are alter egos of each other, plaintiffs' standing is limited only to alleged damages to plaintiffs. Plaintiffs resided at Franklin, Manor, not at Gabriel Manor or The Crossings, and they have not shown that they were harmed by anything alleged to have been done by any defendant in connection with Gabriel Manor or The Crossings. Plaintiffs lack standing to allege claims premised on a contractual breach against any of the defendants when no relationship exists between themselves and Gabriel

7

Manor or The Crossings. Therefore, the claims based against Gabriel Manor and The Crossings are dismissed for lack of standing. To hold otherwise would violate the principle that "one who is not a party to the contract may not maintain an action for its breach." *Matternes v. City of Winston-Salem*, 286 N.C. 1, 12 (1974).

Motion for Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "[F]or purposes of 12(c), 'the pleadings are closed upon the filing of a complaint and an answer (absent a court-ordered reply), unless a counterclaim, crossclaim, or third-party claim is interposed.'" *Mandujano v. City of Pharr, Texas*, 786 F. App'x 434, 436 (5th Cir. 2019) (quoting 5C Charles Alan Wright et al., Federal Practice and Procedure § 1367 (3d ed. Apr. 2019 Update)); *see also Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405 (4th Cir. 2002) (pleadings closed after answer filed). In this case, defendants filed on an answer on May 31, 2016 and an amended answer on June 21, 2016. Accordingly, the pleadings are closed, and defendants' motion is timely.

The Court reviews the Rule 12(c) motion under the same standard as a motion to dismiss pursuant to Rule 12(b)(6)—assuming the facts in the complaint as true and drawing all reasonable inferences in plaintiffs' favor. *Burbach Broad*, 278 F.3d at 406. Taking the allegations as true, the Court concludes that plaintiffs have not adequately alleged their claim.

Under the UDTPA, it is illegal for a company to engage in "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 71–1.1. "In order to establish a *prima facie* claim for unfair trade practices, a plaintiff must show: (1) [the] defendant committed an unfair or deceptive act or practice, (2) the act in question was in or affecting commerce, and (3)

8

the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 548 S.E.2d 704, 711 (N.C. 2001) (citation omitted). Where a claim stems from an alleged misrepresentation, a plaintiff must "demonstrate reliance on the misrepresentation in order to show the necessary proximate cause." *Bumpers v. Comm. Bank of N. Va.*, 747 S.E.2d 220, 226 (N.C. 2013). This requires a plaintiff to establish actual and reasonable reliance. *Id.* at 227. "Actual reliance requires that the plaintiff have affirmatively incorporated the alleged misrepresentation into his or her decision-making process; if it were not for the misrepresentation, the plaintiff would likely have avoided the injury altogether." *Id.*

The general rule is that a breach of contract, even if intentional, does not support a UTDPA claim. *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998). North Carolina law does not allow plaintiffs to "multiply the damages for an ordinary breach of an agreement by re-characterizing the breach as a violation of the UDTPA." *PCS Phosphate Co. v. Norfolk s. Corp.*, 59 F.3d 212, 224 (4th Cir. 2009). The allegations in plaintiffs' complaint boil down to the following: defendants failed to provide what they promised in the residency agreement. The case against defendant lies in contract, not tort. Plaintiffs' attempt to shoehorn "substantial aggravating circumstances" into the complaint is unavailing and consists largely of conclusory statements about fairness and defendants' motivations. "Given the contractual center of this dispute, [plaintiff's UTDPA claim is] out of place." *Broussard*, 155 F.3d at 347.

Because the Court determines the plaintiff's UDTPA claim merely re-characterizes her breach of contract claim and is properly subject to dismissal, the Court need not engage with defendants' remaining arguments. This Court grants defendants' motion for judgment on the pleading and plaintiffs' UDTPA claim is dismissed.

9

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to certify class [DE 121] is DENIED. Defendants' partial motion to dismiss and for judgment on the pleadings [DE 127] is GRANTED. The claims against Gabriel Manor and the Crossings are dismissed, and defendants are entitled to entry of judgment in their favor on their UDTPA claim all defendants. Defendants' motion to seal [DE 137] and the parties' consent motion to amend the scheduling order [DE 144] are GRANTED.

SO ORDERED, this 21 day of October 2020.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE